## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **KIMBERLY NALER,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **4:20-cv-1367-CLM** |
| | ) | |
| **KILOLO KIJIKAZI,** | ) | |
| **Acting Commissioner** | ) | |
| **of the Social Security** | ) | |
| **Administration,** | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Kimberly Naler seeks Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Naler's application in an opinion written by an Administrative Law Judge ("ALJ"). Naler argues: (1) that the ALJ failed to give proper weight to the opinions of her treating physicians, Dr. Garth and Dr. Tariq; (2) that the ALJ failed to give proper weight to the opinion of consultative examiner, Dr. Ripka; and (3) that substantial evidence doesn't support the ALJ's finding that she has the residual functional capacity to perform light work.

The court agrees that the ALJ didn't adequately explain why he discounted Dr. Garth and Dr. Tariq's opinions. So the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner for further proceedings.

## I.      Statement of the Case

This is the second time that Naler has appealed the SSA's denial of her application for SSI. Before the court discusses Naler's two unfavorable decisions, it details Naler's impairments, as she told them to the ALJ.

### A.      Naler's Disability, as told to the ALJ

Naler was 42 when she filed for SSI. R. 189. Naler has a high school education and past work as a cashier and office assistant. R. 221.

In her disability report, Naler alleged that she cannot work because of bulging discs in her back, neck pain, shoulder issues, and migraines. R. 220. At the second ALJ hearing, Naler testified that her migraines and severe back pain are the main reasons she cannot work. R. 811–12. Naler also suffers from osteoarthritis in her spine, neck, knees, and joints. R. 812–13. And Naler has trouble sleeping at night. R. 812. To help ease these symptoms, Naler takes Excedrin Migraine, Trazadone, and over the counter medicine. *Id.*

On a typical day, Naler stays home, reads, and watches television. *Id.* Naler lives with her parents, and her mother does all the housework. R. 814. Though Naler has a driver's license, she drives only a few times each week. *Id.* As for shopping, Naler will "run to Walmart and pick up a few things and that's about it." *Id.* And while Naler will sometimes microwave her food, she cannot stand at the stove and cook for an hour or two. *Id.*

2

### B.    The First ALJ Decision

The SSA reviews applications for SSI in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 416.1400(a)(1-4).

Naler applied for SSI in December 2012. R. 31. The SSA first denied her claim in March 2013. *Id.* So Naler requested an ALJ hearing, which the ALJ conducted in July 2014. *Id.* Four months later, the ALJ denied Naler's request for benefits, (R. 31–41), finding that Naler was not disabled because she could perform work that exists in significant numbers in the national economy. R. 39–40.

Naler then requested that the SSA's Appeals Council review the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. R. 1–4. So Naler appealed the SSA's denial of benefits to this court. This court reversed the SSA's denial of benefits because the ALJ relied on a hypothetical question to the vocational expert that didn't account for the limiting effects of Naler's migraines to find that there were jobs Naler could perform. *See Naler v. Berryhill*, 2017 WL 2274733, at *8 (N.D. Ala. June 27, 2017).

### C.     Determining Disability

Before detailing the second ALJ decision, the court lays out the SSA's five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 416.920(a), 416.920(b) (Step 1); 20 C.F.R. § 416.920(c) (Step 2); 20 C.F.R. §§ 416.920(d), 416.925, 416.926 (Step 3); 20 C.F.R. § 416.920(e-f) (Step 4); 20 C.F.R. § 416.920(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform

4

physical and mental work activities on a sustained basis. The intermediate step of determining Naler's residual functional capacity is the most important step here, as Naler's challenges flow from the ALJ's decision at this point.

### D.     The Second ALJ Decision

The ALJ conducted a second hearing on Naler's claim for benefits in March 2018. Four months later, the ALJ issued a second unfavorable decision.

At Step 1, the ALJ determined that Naler was not engaged in substantial gainful activity and thus her claims would progress to Step 2. R. 783–84.

At Step 2, the ALJ determined that Naler suffered from the following severe impairments: degenerative disc disease, neuropathy, osteoarthritis, and migraines. R. 784–86.

At Step 3, the ALJ found that none of Naler's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. R. 786–87. So the ALJ next had to determine Naler's residual functional capacity.

The ALJ determined that Naler had the residual functional capacity to perform light work with these added limitations:

- Naler can perform unskilled work that does not require complex instructions or procedures.

- Naler can have frequent interaction with co-workers and supervisors.

- Naler can have occasional contact with the general public.

- Naler cannot climb ropes, ladders, or scaffolds.

- Naler cannot work at unprotected heights or with hazardous machinery.

- Naler can occasionally stoop, crouch, crawl, and kneel.

- Naler can frequently handle with the upper left extremity.

- Naler cannot work in concentrated exposure to dust, fumes, or other respiratory irritants.

- Naler can do work that is not performed in direct sunlight (due to headaches).

- Naler cannot perform work that does not allow her to use ear protection to decrease sound due to headaches.

R. 787–94.

At Step 4, the ALJ found that Naler could not perform her past relevant work. R. 795. At Step 5, the ALJ determined that Naler could perform jobs, such as assembler; hand packager; and inspector, frames; that exist in significant numbers in the national economy and thus Naler was not disabled under the Social Security Act. R. 38–39.

Naler requested an Appeals Council review of the ALJ's decision. The Appeals Council considered the reasons Naler disagreed with the ALJ's decision but found no reason under its rules to assume jurisdiction. R. 771–74. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.    Legal Analysis

Naler makes three arguments for why the ALJ erred in finding her not disabled. First, Naler argues that the ALJ failed to articulate good cause for discounting the opinions of her treating physicians, Dr. Garth and Dr. Tariq. Second, Naler asserts that the ALJ failed to give proper weight to the opinion of Dr. Ripka, a consultative examiner. Finally, Naler contends that the ALJ erred in finding that she has the residual functional capacity to perform light work.

The court agrees that the ALJ failed to adequately explain why he discounted the opinions from Dr. Garth and Dr. Tariq. So the court needn't address Naler's other arguments for reversal. Before explaining how the ALJ erred, the court will recap

Dr. Garth and Dr. Tariq's findings and the ALJ's reasons for assigning their opinions little weight.

1. <u>Background</u>: Dr. Garth from UAB Sports Medicine evaluated Naler in March 2014 for a second opinion on potential knee surgery. R. 708. Dr. Garth diagnosed Naler with osteoarthritis and pes anserinus tendinitis, and his x-ray findings noted that Naler had decreased medial joint space. *Id.* Though Dr. Garth stated that Naler wasn't a candidate for a partial knee replacement, he noted that she would eventually need total knee replacement surgery. *Id.*

In January 2015, Dr. Garth filled out a physical capacities form on Naler's behalf. R. 714. Dr. Garth circled that Naler can sit upright for 5 hours at a time, stand for 1 hour at a time, and walk for 1 hour at a time. *Id.* Dr. Garth then responded that he would expect Naler to spend 5 hours in an 8-hour period lying down, sleeping, or sitting with her legs propped at waist level or above. *Id.* Dr. Garth finally explained that Naler's left knee osteoarthritis, prolonged left knee pain, and decreased medial joint space caused these limitations. *Id.*

Dr. Tariq from Quality of Life Health Services has been Naler's primary care physician for several years. In September 2017, Dr. Tariq filled out a physical capacities form on Naler's behalf. R. 1151. According to Dr. Tariq, Naler can sit upright in a chair for less than 15 minutes at a time and Naler can stand for less than 30 minutes at a time. *Id.* Dr. Tariq then answered that he would expect Naler to spend

2 hours in an 8-hour period lying down, sleeping, or sitting with legs propped at waist level or above. *Id.* Dr. Tariq also responded that he expected Naler to be off-task 25% of the time during an 8-hour day and that Naler would miss 6–7 days of work in a 30-day period. *Id.* Dr. Tariq finally stated that Naler's chronic back pain caused these limitations and that Naler's medicine may cause sleepiness. *Id.*

The ALJ gave little weight to both Dr. Garth and Dr. Tariq's opinions. R. 789, 793. As for Dr. Garth's opinions, the ALJ stated, "they are not supported by Dr. Garth's treatment records and they are not consistent with the totality of the evidence, including the claimant's more recent primary are provider records." R. 789 (citing Exhibit B48F). The ALJ found that Dr. Tariq's opinions were "not entirely consistent with the treatment records from Dr. Jones, a neurosurgeon (Exhibit B7F), or from Dr. Bowman, an orthopedist (Exhibit 29 F) or with the diagnostic imaging in the file, including the most recent MRI's done in 2016 (Exhibit B46F)." R. 793.

2. <u>No good cause</u>: Under the regulations that apply to Naler's claim for benefits, an ALJ must give substantial or considerable weight to the opinion of a treating source absent good cause to discount his opinion. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Good cause to discount a treating physician's opinion exists "when the: (1) treating physician opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical

records." *Id.* The ALJ must "clearly articulate" the reasons for giving less weight to the opinion of a treating physician, and "[t]he failure to do so is reversible error." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019).

Here, the ALJ failed to clearly articulate why he was giving less weight to Dr. Garth and Dr. Tariq's opinions. Though the ALJ stated that Dr. Garth's treatment notes didn't support his opinions, the ALJ did not explain this conclusion. And it's far from apparent why the ALJ would find Dr. Garth's treatment notes—which recorded decreased medial joint space and found that Naler would need total knee replacement surgery—to contradict the limitations Dr. Garth noted in the physical capacities form. Nor did the ALJ explain his general statement that Dr. Garth's opinions were not "consistent with the totality of the evidence, including the claimant's more recent primary care provider records." R. 789. And if an ALJ discounts a treating physician's opinion because it conflicts with other findings, the ALJ must explain how the "findings are genuinely inconsistent" with the medical expert's opinion. *Simon v. Comm'r of Soc. Sec. Admin.*, 7 F.4th 1094, 1107 (11th Cir. 2021).

The court recognizes that earlier in his hearing decision the ALJ discussed Naler's recent primary care records. For example, the ALJ noted that Naler last complained of knee pain to her primary care provider in February 2017. R. 789. And the ALJ explained that during that doctor's appointment, Naler reported a 3/10 pain

level, tenderness of the left knee with moderate pain on range of motion, and tenderness at the right knee with mildly reduced range of motion. *Id.* But the ALJ didn't explain which of these findings contradicted Dr. Garth's opinions or the rationale behind finding these treatment records to conflict with the limitations listed in the physical capacities form. And tellingly, the Commissioner doesn't point to which specific treatment notes or primary care records support the ALJ's decision to give little weight to Dr. Garth's opinions. *See* Doc. 15 at 11–12. Plus, even if some of these records support discounting Dr. Garth's opinions, this court cannot "affirm simply because some rationale might have supported the ALJ's conclusion." *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984). So the court finds that the ALJ failed to adequately articulate good cause for discounting Dr. Garth's opinions.

The ALJ's analysis of Dr. Tariq's opinions suffers from the same defects as his analysis of Dr. Garth's opinions.[1] Though the ALJ generally states that Dr. Tariq's opinions aren't "entirely consistent" with treatment records from Dr. Jones, a neurosurgeon, Dr. Bowman, an orthopedist, or Naler's diagnostic imaging, including her 2016 MRI, the ALJ doesn't explain ***how*** these records contradict Dr. Tariq's opinions. R. 793. Nor does the ALJ cite the specific findings that he

---

[1] The Commissioner's brief fails to address Naler's argument that the ALJ didn't sufficiently explain his decision to discount Dr. Tariq's opinions. Instead, the Commissioner mistakenly read Naler's brief as challenging the ALJ's assessment of the opinions of Dr. Hakim, a consultative examiner. Unlike when discounting a treating physician's opinions, an ALJ needn't have good cause to discount the opinions of a one-time consultative examiner. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

determined contradicted Dr. Tariq's opinions. Like with Naler's primary care treatment records, the ALJ discussed the specifics of these medical records earlier in his hearing decision. R. 790–91. But once again, it would be inappropriate for the court to guess about which findings the ALJ thought supported his decision to give little weight to Dr. Tariq's opinions. *See Owens*, 748 F.2d at 1516. In short, without more explanation from the ALJ on his thought process, the court cannot say that he provided good cause for discounting Dr. Garth and Dr. Tariq's opinions. So the court will reverse the Commissioner's denial of benefits for failing to adequately articulate valid reasons for discounting Dr. Garth and Dr. Tariq's opinions.

But the court rejects Naler's argument that the ALJ's error requires the court to accept Dr. Garth and Dr. Tariq's opinions as true. Instead, the court will remand this case to the Commissioner for the ALJ to more fully explain how he evaluated the opinion evidence in the record. *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011). In reaching this decision, the court is not holding that the ALJ must afford Dr. Garth and Dr. Tariq's opinions substantial or considerable weight. The court is instead merely requiring the ALJ to explain the rationale for the weight he assigns their opinions.

### IV.    Conclusion

For the reasons stated above, the court will **REVERSE** the SSA's denial of benefits and **REMAND** this case to the Commissioner for the ALJ to reassess the opinions of Naler's treating physicians. The court will enter a separate final order that closes this case.

**DONE** on January 27, 2022.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE